Loss and others *vs.* OBRY and wife.

1. To correct deeds for fraud or mistakes in them, is one of the ancient and well established heads of equity jurisdiction, and it is the duty of the court, where such fraud or mistake is clearly proved, to correct it by any means in its power to effect the amendment and the object of it.

2. Mistakes are corrected, even where they occur in the records of proceedings of courts, and exist in the records themselves. This is done, not by reviewing the judgments or proceedings of the courts, but by restraining the parties who may take advantage of such mistakes, from doing so, or by compelling them to execute proper papers for the purpose of such correction.

3. The defendants having refused to correct the mistake in the deeds, after it was brought to their notice, and defended the suit when they knew it was wrong and against good faith to defend it, must pay the costs.

This cause was argued on final hearing, upon the pleadings and proofs.

*Mr. Carpenter* and *Mr. Ransom,* for complainants.

*Mr. Lippincott,* for defendants.

THE CHANCELLOR.

The bill is filed to correct and reform two deeds given to the defendants, on account of mistakes in them. One of these deeds was given by the complainant, Anastasia Loss, and the other by Luke Stainsby, the special guardian of Jane C. Loss and Virginia L. Loss, infant children of Anastasia Loss, appointed by this court on her application for the

sale of their lands. The lands sold were part of the real estate devised to Anastasia Loss and her two children, by the last will of her husband, Charles Loss. Stainsby, the special guardian, was authorized by an order made in this matter, August 8th, 1854, to sell the estate of the infants in a tract of one acre and seventeen one-hundredths, in Hoboken. After this order, Stainsby entered into a written agreement, as special guardian, with the defendants to convey to them by deed, with warranty, a part of the east end of the tract, ninety-nine feet front by one hundred feet deep, fronting on the Hackensack turnpike, being about one-fifth of the whole tract. The price was $800; $200 to be paid in cash, the residue to be secured by bond and mortgage at three years, with interest. This agreement was dated July 26th, 1855.

In the report of this sale made to the court, it is stated that the whole tract of one and seventeen one-hundredth acres, was sold for the price of $800; in other respects the terms of sale were reported according to the written agreement. This sale, as reported, was confirmed by the Chancellor, and on the 1st day of September, 1855, Stainsby, as special guardian, executed a deed to the defendants for the whole tract. And the complainant, Anastasia Loss, on the same day, executed a deed to the defendants, a conveyance by release, of all her estate in said tract.

The mistake complained of, is that these papers, to wit, the report of sale, confirmation, guardian's deed, and the release of Anastasia Loss, in the description, by metes and bounds, of the lands sold, give the bounds of the whole tract authorized to be sold, instead of the part of it included in the agreement for sale. This is alleged to be the mistake of the solicitor or the clerk of the solicitor, who drew these papers.

The defendants, in June, 1856, made another purchase of Stainsby, as special guardian, of a part of the whole tract, adjoining the lot of one hundred feet deep, at the east end, described in the written agreement of July 26th, 1855, which carried their land back to Luke street, a street by which the

whole tract was intersected, at about one-third of the distance from the front to the rear, and gave them the whole of the tract east of Luke street. The sale was reported to, and confirmed by the court, and the defendants accepted the deed, paid the price agreed upon, and entered in possession of the land to Luke street. This purchase is strong and apparently clear proof that the defendants understood that the first purchase and conveyance to them was of the east part of the lot of one hundred feet deep, and that only. There is, besides the written agreement and this purchase, much other proof of this mistake.

The proof is, in my opinion, not only sufficient, but irresistible and conclusive, that the description of the whole lot was inserted in the report, confirmation, conveyance, and release, by mistake and inadvertence, instead of the part described in the agreement for sale, and that these papers were signed and executed by the parties under the mistaken impression that the description in them only included the one hundred feet of the east end. The residue of the whole tract, west of Luke street, was afterwards sold by the special guardian and Mrs. Loss to other purchasers, who all joined as complainants in the bill. These sales were known to the defendants, who did not interfere or claim title to these parcels. This passive acquiescence may not estop them, but it is cogent evidence against them as to their understanding of the decree.

To correct deeds for fraud or mistakes in them, is one of the ancient and well established heads of equity jurisdiction, and it is the duty of the court where such fraud or mistake is clearly proved, to correct it by any means in its power to effect the amendment and the object of it.

The authorities are numerous and uniform which establish this principle. 1 *Story's Eq. Jur.*, §§ 152—160. Lord Hardwicke recognized and acted upon it in *Baker* v. *Paine*, 1 *Ves., sen.*, 457 ; *Henkle* v. *Royal Exchange Assurance Co.*, *Ibid.* 317, and *Motteux* v. *London Assurance Co.*, 1 *Atk.* 545.

The Supreme Court of the United States, in *Bradford* v.

*The Union Bank of Tennessee*, 13 *How.* 57 ; Chancellor Kent, in *Gillespie* v. *Moon*, 2 *J. C. R.* 585, and in *DeRiemer* v. *Cantillon*, 4 *J. C. R.* 85 ; Chancellor Green, in this court, in *Waldron* v. *Letson*, 2 *McCarter* 126, and Chief Justice Beasley, sitting for the Chancellor, in *Firmstone* v. *De Camp*, 2 *C. E. Green* 317, have sanctioned and acted upon it. And such mistakes are more readily corrected where there is a preliminary agreement in writing, by which to correct them.

Mistakes are corrected even where they occur in the records or proceedings of courts, and exist in the records themselves. This will be done, not by reviewing the judgments or proceedings of these courts, but by restraining the parties who may take advantage of such mistakes from doing so, or by compelling them to execute proper papers for the purpose of such correction. 1 *Story's Eq. Jur.*, § 166; *Jeremy's Eq. Jur.* 492; *Barnesley* v. *Powell*, 1 *Ves.*, sen., 119, 284, 289 ; *De Riemer* v. *Cantillon*, and *Waldron* v. *Letson, supra.*

In this case the mistake can be corrected most effectually and simply, by the defendants executing to each of the complainants who have purchased parts of said tract, west of Luke street, or who would have title to such parts if such mistake had not been made, deeds conveying and releasing to each of them, respectively, the part so purchased by each.

The mistake in this case was not made by any fault or fraud of the defendants, but by the carelessness and negligence of the solicitor of the special guardian, and of Mrs. Loss. Neither could have read the report, the deed, or the release; or the mistake would certainly have been discovered. Had the defendants been guilty of no other wrong, it would have been equitable that the complainants should have been paid the costs of this suit. But the defendants, after the mistake was brought to their notice, have refused to correct it, and have pertinaciously defended this suit, when I am fully convinced they knew it was wrong, and against good faith to defend it. This defence was an attempt at fraud. For this it is right that they should be condemned in the costs.