BURGIN *vs.* GIBERSON and others.

Courts of equity will relieve against mistake, and will correct and reform deeds and instruments of the most solemn character to grant such relief. But when relief is sought from deeds or other writings, the mistake must be clearly proved.

On final hearing, on pleadings and proofs.

*Mr. P. L. Voorhees,* for complainant.

*Mr. D. G. Pancoast,* for defendants.

THE CHANCELLOR.

This is a suit for foreclosure and sale of mortgaged premises in Atlantic county. The defence set up in the answers is, that the complainant's mortgage was obtained by duress, and that by mistake it includes more property than it was intended to include therein. The second branch only of the defence

was insisted on at the hearing; the first was abandoned. The parties appear to have directed their testimony to the defences set up in the answers, and no objection is made as to the form in which the defence of mistake comes before the court—that it is here by answer, and not by cross-bill. The facts of the case, as far as they are material to the question presented for consideration, are, that Charles Souders, on the 19th of September, 1870, being in arrest for debt, requested the sheriff, in whose custody he was, and the attorney of the plaintiffs in the execution, to go with him to the house of the defendant, James Giberson, senior, on the assurance that Giberson would assume payment of the debt to procure the release of Souders. They proceeded together to Giberson's house accordingly, and there the latter agreed with the attorney, that to obtain the discharge of Souders, he would secure to the plaintiffs the payment of the debt by his bond and mortgage. The attorney agreed to accept that security, and in consideration thereof, to discharge Souders. The attorney, then and there, drew the bond and mortgage to secure the debt, $1077.59, which was made payable in two equal installments, in one and two years from their date, with interest. He was unacquainted with the premises which it was proposed to mortgage. Giberson handed to him two deeds from which to draw, and from which he drew, accordingly, the description of the mortgaged premises. One of these deeds is dated December 18th, 1856, and was executed by Elias Wright and his wife to Giberson. It conveys, with warranty general, all the right, title and interest of Wright to lands lying and being within the bounds of a tract therein described. No more particular description of the property is given. The contents are, in the deed, said to be thirty-eight acres, (after exceptions,) which, it is added, were thereby intended to be conveyed. On the 18th of September, 1871, Giberson conveyed to his son all his real estate. The tract described in the deed from Wright, includes, in its bounds, all the real estate owned by Giberson. That deed, however, it was said on the argument, (there is no proof in the cause, however, on the subject,) was made to convey to

Giberson any lands which, under surveys to Wright, (who was the owner of an adjoining farm,) or those under whom he claimed, might be embraced in the limits of Giberson's farm. The object was to convey to Giberson any land within the bounds of his farm to which he had title only by or under surveys which lapped over prior surveys, to the benefit of which Wright was entitled, and under which the latter was, or claimed to be, the owner of such lands. Giberson did not hold the title to any part of the rest of his farm under Wright. As before remarked, the attorney knew nothing of the property, or of Giberson's title to it. It appears from the evidence of the former, that Giberson, though willing to become surety, personally, for Souders, was, at first, unwilling to mortgage his farm. He, however, on the urgent entreaty of Souders, and the agreement of the latter to give him his bond securing the payment of the money to Giberson in time to enable him to meet the installments on the mortgage as they should become due, agreed to give the mortgage. He then produced his deeds, the deed from Wright, and a deed for three acres from one Charles T. Risley, and handed the former to the attorney, in order that he might take the description for the mortgage from it. Before drawing the mortgage, the attorney asked him if the land described in the Wright deed, was that on which the house in which they were, (Giberson's dwelling-house on the farm,) stood ; and whether there was any insurance on the house. Giberson told him it was the same ; but that the house was not insured. The attorney then inquired of the sheriff, whether he thought the property was sufficient, without insurance ; to which the latter replied, that he did. The attorney, fearing that the security would be insufficient without the insurance, asked Giberson if he had any objection to his including the land described in the Risley deed in the mortgage, as additional security. To this, Giberson answered, that he thought there was enough, but that the attorney might put that property in. The attorney, accordingly, included it in the mortgage. The sheriff corroborates the attorney in this statement. He says

that he was in the room part of the time while the mortgage was being written ; that the attorney sent for him while the latter was writing, and asked him if the property was the property they ought to have ; that he picked up the deed— (he subsequently says his impression is, it was the mortgage and not the deed)—looked at it, and looked at the lines, and saw that they ran around the old graveyard, (it appears, from the description in the deed from Giberson to his son, that the farm included a family burial-ground,) and said it was all right ; that he saw lines he was familiar with, and supposed it was all Giberson's property ; that he believed, from the description contained in the deed as he read it, that the property included Giberson's farm and dwelling-house ; that he does not remember that there was anything said at the time about the mortgages including the farm and dwelling-house, but after the mortgage was executed, the attorney asked Giberson if there was any insurance on the buildings, and the latter said he had had an insurance on them, but there was none then, and told something about a note.   He adds that the attorney asked him about an insurance on the property, and he said he thought the farm was well worth the mortgage without the buildings.   He says, however, he is not sure Giberson heard the attorney make this inquiry of him.   He says further that, when the attorney asked Giberson about the insurance, he referred to the property contained in the mortgage.   It is urged that there is a discrepancy between the statements of the sheriff and the attorney in locating the conversation in respect to the insurance, the former stating that it took place after the mortgage was executed, while the latter says it was before the mortgage was drawn.   It is not surprising that there should be a difference of recollection ; the transaction took place three years before the sheriff's testimony was given, and four years before the attorney was sworn in this cause.   It seems probable, however, that the latter is correct in his recollection, for the mortgage shows that the description of the piece of three acres which was added to the security, as he says, in pursu-

ance of his suggestion for more land, in view of the fact that there was no insurance, was written in the mortgage at the time it was drawn, and not inserted afterwards. The mortgage was entirely written out, the attorney having no blank at hand. Giberson says that when he consented to sign the papers he handed the attorney a deed, and after the latter "wrote on that," he said, " haven't you got any other real estate to put in ?" and then he gave him the three acre piece, and the attorney said, " yes, that will strengthen the matter."

The deed from Wright being shown to him, Giberson said that that was the deed of the first property he gave to the attorney. He says, he said to the latter, " here is the deed for the property I bought of Elias Wright; I will mortgage that, and no other." He adds that, after the attorney had " drawn that off into the mortgage," he then said, " have you no other small piece you can put in ?" and that he then held up the Risley deed for three acres, more or less, and told him he might put that in the mortgage. It appears clear, that the suggestion as to the addition of land to compensate for the want of insurance on the buildings was made before the mortgage had been drawn. The attorney testifies, that Giberson told him the property in the Wright deed was that on which the dwelling-house in which they were was situated. Giberson corroborates him in this statement. He says, in his cross-examination, that, at the time of the execution of the mortgage, the attorney asked him whether the mortgage was on the improvements.

The evidence satisfies me, that the attorney and the sheriff both understood that the mortgage was on the farm, and there was nothing in Giberson's statements to lead to any suspicion to the contrary. The attorney, probably, as he very naturally would do, thought that the farm contained only thirty-eight acres; but still, he evidently thought he was obtaining a mortgage on the whole farm; and Giberson, whatever might have been his secret intention, did nothing to give him to understand that he was in error in this supposition. There is no evidence as to the thirty-eight acres

conveyed by the Wright deed, whether they lie together, or are merely patches, strips, and gores of land. It would seem,. from Giberson's statement as to what he said to the attorney when, as he says, the latter asked whether the mortgage was on the improvements, that the thirty-eight acres are in the unimproved land. The description of the mortgaged premises contained in the mortgage taken from the Wright deed,. covers the farm. It does not appear that it covers anything else. The only evidence on that point is the testimony of Giberson, who says: "The property contained in the two deeds (the Wright and Risley deeds) mentioned, is all the property I intended to mortgage, or authorized to be put into the mortgage. I understood that I was mortgaging the forty-one acres that I acquired by the two deeds, and no more. I had, at that time, other deeds for lands lying within the bounds mentioned in those deeds. There were many different tracts included in the deeds, within the bounds of the lands described in the Elias Wright deed." There is no ground for the imputation of fraud in including the entire farm in the mortgage. There seems to be no reason to doubt, that the attorney would not have accepted as security, the property alone which Giberson now says he intended to mortgage. Nor does there appear to be any reason to doubt, that the attorney would not have accepted a less security than the whole farm. Nor that he supposed, and that Giberson knew he so understood the matter, that the whole farm was covered by the mortgage. The same suggestions apply with equal force to the allegation of mistake.

Courts of equity will relieve against mistake, and will correct and reform deeds and instruments of the most solemn character to grant such relief. But when relief is sought from deeds or other writings, the mistake must be clearly proved. *Story's Eq. Juris.*, § 152; *Graham* v. *Berryman*, 4 *C. E. Green* 29. The defendants have given no proof of mistake which can avail them. In addition to the testimony of Giberson already considered, is that of his wife and two daughters. His wife does not profess to have heard all the

conversation on the subject. She says she heard "a good bit of it," but that she was "in and out of the room" where it took place, engaged in her household duties. One of the daughters says, that she, herself, was not present when the mortgage was drawn, and the other was not present at the whole of the conversation on the subject. She says she was there most of the time; that she was in and out of the room. These witnesses testify that the property which was mortgaged was the Wright and Risley pieces; and the wife and one of the daughters say that Giberson said there were thirty-eight acres in one, and three acres in the other. The attorney swears that nothing was said about the number of acres. The testimony of the defendants' witnesses is not sufficient to lead to the conclusion, that the attorney was not led to believe that the property mortgaged was the farm. The truth seems to be, that Giberson agreed to mortgage his farm to secure the debt; that he gave to the attorney the Wright deed, from which to take the description; that on the attorney's ascertaining that the house was not insured, the Risley property, supposed by the latter to be additional to the farm which he understood to be described in the Wright deed, was added. There is no evidence whatever, on which any reliance can be placed, that any discrimination was made by Giberson in favor of any part of his farm, or that it was not understood that he was mortgaging the farm. Giberson's son took his conveyance of the property, subject to, and with notice of the mortgage. Besides, there is good reason to suspect that that conveyance, made, as it was, a few days before the first installment of the mortgage became due, was merely colorable; a family arrangement to aid James Giberson, senior, in his effort to avoid the payment of the debt which he had assumed to pay for Souders, on the faith of the obligation of the latter to him, but which Souders had failed to fulfill. The bond, which the mortgage in suit was made to secure, was accompanied by a warrant of attorney to confess judgment, under which a judgment might have been entered against the obligor for the installment and interest due on the 19th of September,

1871, by which means a lien might have been got on the whole of the obligor's real estate, for that installment and the interest then due and unpaid on the bond.

The conveyance, by Giberson to his son, is dated on the 19th of September, 1871. On what consideration it was made, does not appear, except that in the answer of the latter, it is said to have been made "for a valuable consideration."

There will be a decree for complainant.