**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1123-19T4

IDA LOTT,

      Plaintiff-Respondent,

v.

BOROUGH OF ROSELLE,
NEW JERSEY,

      Defendant-Respondent,

and

ROSE THREE, LLC, a NJ Limited
Liability Company and
ROSE HOMES, LLC, a NJ Limited
Liability Company,

      Defendants-Appellants.

_____

Argued October 21, 2020 – Decided  December 28, 2020

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000131-18.

Alfred L. Faiella argued the cause for appellants.

Anthony J. Marinello argued the cause for respondent Ida Lott (Robinson Miller, LLC, attorneys; Anthony J. Marinello and Michael J. Gesualdo, on the brief).

PER CURIAM

Defendants Rose Three, LLC and Rose Homes, LLC appeal from a Chancery Division order granting plaintiff Ida Lott's request that the Borough of Roselle (the Borough) issue a corrective deed reciting the accurate legal description and block and lot number for property plaintiff and her late husband Charles Lott purchased from the Borough in 1994.[1] Defendants also appeal from the order dismissing their counterclaim, which sought an order allowing the Borough to deed the property to Rose Homes, LLC. Having considered the arguments presented, we are convinced the court correctly rejected the Borough's and defendants' claims that the complaint is time-barred, and we therefore affirm the court's determination plaintiff is entitled to a corrective deed.

I.

---

[1] Charles Lott passed away in 1995.

We discern the following facts from the evidence presented at trial.[2] In 1988, plaintiff and Charles Lott purchased a home on Morris Street in the Borough. The property lot is forty-feet by one-hundred-feet and is designated as Block 2403, Lot 17 (Lot 17) on the Roselle tax map.

In 1994, the Borough sold plaintiff and her late husband the forty-by-one-hundred-foot lot that is contiguous to Lot 17. They paid the Borough $5000 for the lot, which is designated as Block 2403, Lot 16 (Lot 16) on the Borough's tax map. Lot 16 is an undeveloped lot, and the Borough resolution authorizing its sale to plaintiff and Charles Lott described the lot as "vacant" and permitted its use "as a side yard only."

Plaintiff and her husband were not represented by counsel in connection with their purchase of Lot 16. The April 14, 1994 deed transferring title to the lot was prepared by the Borough attorney. The deed includes what the Borough

---

[2] We observe that the parties' appendices are littered with documents and discovery materials that were not admitted in evidence before the trial court. In our consideration of the trial court's order on appeal, we rely solely on the pleadings, trial testimony, and evidence admitted at trial. See N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 278 (2007) (stating "[o]ur scope of review . . . is limited to whether the trial court's decision is supported by the record as it existed at the time of trial"); R. 2:5-4(a) ("The record on appeal shall consist of all papers on file in the court . . . below.").

A-1123-19T4

and defendants concede are errors.[3] The deed correctly reflects that the Borough was grantor and plaintiff and her husband were the grantees, and that they paid $5000 to the Borough, but the deed includes an incorrect metes and bounds description and block and lot numbers for Lot 16. The deed, however, expressly incorporates the Borough's resolution authorizing the sale, and the resolution, which is attached to the deed, accurately identifies the property as "Lot 16 in Block 2403 as shown on the [t]ax [m]aps of the Borough." Since the 1994 purchase of Lot 16, plaintiff has continuously maintained Lot 16 and utilized it as the side yard of her residence.

---

[3] The trial transcripts include colloquy concerning written stipulations between the parties, including a stipulation that the deed's metes and bounds description and block and lot numbers are incorrect, but no written stipulations were admitted in evidence; the record on appeal does not include any written stipulations; and the trial transcripts do not reflect any stipulations orally agreed to by the parties. See R. 2:6-1(a)(1)(I) (requiring the appellant to include in the appendix on appeal "such other parts of the record . . . as are essential to the proper consideration of the issues, including such parts as the appellant should reasonably assume will be relied on by the respondent in meeting the issues raised"). In any event, even without a formal stipulation, the record otherwise reflects there is no dispute the metes and bounds description and lot and block numbers in the 1994 deed are incorrect, and defendants do not argue otherwise. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (finding an issue not briefed on appeal is deemed waived).

Defendants are in the real estate redevelopment business. Over the years, they have agreed to purchase and redevelop Borough-owned properties.[4] In 2014, Warren King, a principal of defendants, went to Lot 16 to conduct a soil test.[5] He began digging on the property but was interrupted by plaintiff. According to King, plaintiff said, "What are you doing?", and he responded,

---

[4] In their appendix on appeal, defendants include a September 4, 2017 redevelopment agreement between Rose Three, LLC and the Borough. It appears the agreement was annexed as an exhibit to plaintiff's complaint. The agreement was not, however, admitted in evidence during the trial, and we therefore do not consider it in our assessment of the parties' arguments on appeal. In any event, defendant's appendix includes a list of trial exhibits prepared by plaintiff's counsel. The list identifies trial exhibit P9 as consisting of "[r]elevant pages from [the] [r]edevelopment [a]greement." The record also shows the pages comprising exhibit P9 were admitted in evidence, but the pages comprising the exhibit are not identified as such in the parties' appendices. Defendants' representative Warren King, however, identified two pages of a redevelopment agreement dated September 2017 as comprising at least part of exhibit P9. The first is the "cover page" of the agreement with the September 2017 date, and the other, referred to as the "second page," includes the following language: "[A]ction is required in the courts to clarify the status of the Borough's title [to] such parcels," including Lot 16. We therefore discern that exhibit P9 in evidence consists of at least the first two pages of the redevelopment agreement that is included in defendants' appendix as an attachment to plaintiff's complaint. The record does not permit a determination as to whether any other pages of the agreement were included in exhibit P9. We therefore limit our consideration of exhibit P9 to the first two pages of the September 2017 redevelopment agreement that King identified during his testimony.

[5] It appears King attempted to test the soil on Lot 16 in anticipation of entering into a future contract with the Borough for the purchase of the lot. There is no evidence that in 2014 defendants were parties to a contract with the Borough providing for their purchase of Lot 16.

"I'm preparing to build on this lot." Plaintiff told King he could not dig on the property because she "owned the property." In response, King stopped digging and left.

Following King's visit to the property, plaintiff contacted an attorney. In a May 9, 2014 letter to the then Borough attorney, plaintiff's counsel advised that King "had introduced himself [to plaintiff] as the new owner of" Lot 16, and that King's statement "came as a shock to [plaintiff,] who has been maintaining the property since 1988."[6] Plaintiff's counsel explained that plaintiff purchased the property from the Borough in 1994 pursuant to a Borough resolution and an April 14, 1994 deed. Plaintiff's counsel provided the Borough attorney with a copy of the resolution and deed and requested that the Borough attorney determine "what has transpired before any construction is commenced" on Lot 16. Plaintiff's counsel's letter did not mention the incorrect description or lot and block numbers in the deed.

In a June 4, 2014 letter, the Borough attorney responded, stating the Borough was in the process of transferring "unsold lots" to a redeveloper and

---

[6] At trial, neither plaintiff nor King testified that King introduced himself as the new owner of Lot 16. In addition, the record otherwise shows defendants did not enter into the redevelopment agreement permitting them to purchase the property until four years later in 2018. The Borough has never transferred title of the property to defendants.

that Lot 16 "is still listed on the tax record as owned by the Borough." The Borough attorney represented that if the documents provided by plaintiff's counsel "are confirmed as to [plaintiff's] ownership, the Borough cannot 'sell' [such property] as part of [the] redevelopment program." The Borough attorney further stated plaintiff's counsel could "advise [plaintiff] that any such action to date to the extent that it would be in opposition to [her] rights as an owner, has been the product of error in the Borough's record." The Borough attorney further stated he would advise plaintiff's counsel "as to any matters that may indicate a discrepancy as to the 1994 transaction." There is no evidence that following his letter, the Borough attorney or any other Borough representative informed plaintiff or her counsel there was a discrepancy as to the 1994 transaction reflected in the 1994 Borough resolution and deed.

King testified that four years after he first learned of plaintiff's claimed ownership of Lot 16, defendants entered into a redevelopment agreement with the Borough to purchase Lot 16. Although the agreement is dated September 2017, King explained it may not have been executed until the following year, and he otherwise testified defendants reached an agreement with the Borough to buy Lot 16 in 2018. The agreement provides that the Borough has title to Lot

16, but King acknowledged the agreement further states court action was required to clarify the Borough's title to the lot.

King also testified he understood the title problem with Lot 16 concerned a prior foreclosure proceeding involving the property, and that the problem had apparently been resolved to a title company's satisfaction. In 2018, King was aware of plaintiff's claimed ownership of Lot 16, but he received paperwork from the title company that did not show plaintiff owned the property. The title company reported the Borough owned the property. King then returned to the property, spoke again to plaintiff, and advised her he was going to build a house on Lot 16. According to King, plaintiff said, "Wait a minute. I own the property."

Plaintiff retained new counsel and filed a Chancery Division complaint against the Borough and defendants, seeking correction of the 1994 deed to include an accurate metes and bounds description and block and lot numbers for Lot 16. The Borough filed an answer, and defendants filed an answer and counterclaim, seeking an order "finding that the Borough is not obligated to [d]eed the property to [p]laintiff" and permitting the Borough to transfer title to the property to defendants. Defendants opted not to file a crossclaim against the Borough.

Defendants asserted plaintiff's claim was time-barred under the six-year statute of limitations for actions at law for breach of contract. See N.J.S.A. 2A:14-1. The court held a bench trial on the issue of the timeliness of the filing of plaintiff's complaint. Plaintiff presented testimony from the individual who served as the Borough attorney in 1994 when the resolution authorizing the sale of Lot 16 to plaintiff and Charles Lott was adopted. The attorney drafted the 1994 deed, and he acknowledged the deed contained an erroneous legal description and block and lot numbers.[7] He also explained the deed was executed by the Borough's then-Mayor, and the Borough recorded the deed with the Union County Clerk in 1994.

The attorney also explained it was his understanding plaintiff's purchase of Lot 16 would have a "negligible" impact on her real estate taxes because the purchase price reflected that the Borough "valu[ed]" the lot at "very little money"; the lot could not be used as a "buildable lot," and "you really couldn't

---

[7] The legal description included in the deed was for another parcel of property owned by the Borough. In 1996, the Borough sold to a third party the property that was improperly described in the Borough's 1994 deed to plaintiff and Charles Lott.

do too much with it."[8]  The attorney also testified that he understood Lot 16 would merge with Lot 17 because they were contiguous, and plaintiff would thereafter receive a single tax bill for the merged properties from the Borough.

The attorney first became aware of the error in the deed when he was contacted in 2014.  He then spoke with the then Borough attorney and explained plaintiff purchased Lot 16 in 1994 and the deed contained a "faulty description" that "needed to be corrected."

As it turned out, in the years following the 1994 purchase and the subsequent end of the attorney's tenure as the Borough attorney, he represented plaintiff in 1996 and 2007 refinances of the mortgage loans on her property.[9]  The errors in the deed for Lot 16 did not arise during his representation of plaintiff in the 1996 refinance.  In the 2007 refinance, the tax search for the property referred only to Lot 17, and it described the property size only by the dimensions of Lot 17, not the dimensions of the combined Lots 16 and 17.  The

---

[8]  The attorney explained that although plaintiff's home was located on Lot 17, which is the same size as Lot 16, in 1994 the Borough's "zoning ordinance did not permit a stand[-]alone [forty-foot] by [one-hundred-foot lot] to be a buildable lot."  He further explained that plaintiff's home on Lot 17 was permitted as "a preexisting, nonconforming lot."

[9]  The 1996 refinance also included plaintiff's grant of a mortgage on property she owned in Linden.

attorney recalled that each transaction required that plaintiff pay monies for real estate taxes in escrow to the mortgagees. The attorney testified that nothing occurred during the 2007 refinance that caused him to question the accuracy of the description and lot and block numbers in the 1994 deed.

Plaintiff also testified. She explained that she her late husband bought Lot 16 from the Borough in 1994 for $5000 and, since that time, she has maintained Lot 16, which she described as a vacant lot. She understood that following the purchase, Lots 16 and 17 would thereafter be "combined." According to plaintiff, at the 1994 closing, the Borough attorney said the purchase of the property would have "a minimal effect on [the] real estate taxes." She has never received any communication from the Borough advising she failed to pay real estate taxes for Lot 16.

Plaintiff also testified she sought counsel in 2014 after King told her the Borough owned the property, and he was going to build a house on it. She reviewed the subsequent 2014 correspondence from the then Borough attorney to her attorney and understood the Borough would correct the deed.

Plaintiff explained King appeared at the property in 2018, and said he was going to build a house on plaintiff's side yard. In an exchange of correspondence between her attorney and the Borough attorney in 2018, plaintiff learned for the

first time that the Borough did not concede that she owned Lot 16. Plaintiff testified she first confirmed there was a problem with the 1994 deed in July 2018, when title work provided to her current attorney revealed the error in the deed's description and lot and block numbers. She then initiated the present litigation seeking a corrective deed.

Plaintiff explained that from 1993 through 2011, she did not pay her real estate taxes directly. Instead, she paid the real estate tax amounts required by the mortgagees, who then paid the real estate taxes to the Borough. Plaintiff testified she did not receive any tax bills until 2012 when she paid off the mortgage on her home. She agreed the tax bills she then received showed the size of the lot was forty-feet by one-hundred feet, and not eighty-feet by one-hundred feet, but she said she "never saw th[ose] numbers." When she received the bills, she looked only at the amount due and paid it. She agreed that throughout her receipt of the tax bills, the tax assessment and the size of the lot never changed. Plaintiff also testified that when she made her tax payments, she believed she was paying taxes for Lots 16 and 17, which she understood had been combined.

Defendants presented King as a witness. He generally described defendants' redevelopment business and their agreements with the Borough to

purchase its properties, including the 2018 agreement to purchase Lot 16. He also described his 2014 and 2018 interactions with plaintiff at the property.

The court issued a written opinion following the trial. The court rejected defendants' claim that plaintiff's complaint seeking a corrected deed is barred by the six-year statute of limitations for contract claims. See N.J.S.A. 2A:14-1. The court noted defendants' claim that plaintiff had been sent thirty-six tax statements since the 1994 purchase, and none of them referred to Lot 16 or reflected the accurate size of the combined lots plaintiff claimed she owned following the 1994 transaction.[10] Defendants argued the thirty-six tax statements should have caused a person exercising reasonable diligence to question the accuracy of the deed at a time more than six years prior to the filing of plaintiff's 2018 complaint. Defendants asserted plaintiff's cause of action for the corrective deed was therefore barred under the six-year limitations period in N.J.S.A. 2A:14-1.

The court rejected defendant's arguments, finding defendants' claim that plaintiff was negligent by failing to examine her tax statements was not

---

[10] The record does not include the purported thirty-six tax statements defendants claim were sent to plaintiff following the 1994 purchase and prior to the filing of her 2018 complaint. The record provided on appeal does not reflect that the tax statements were admitted in evidence.

supported by any evidence establishing the standard of care for a property owner's review of tax statements. The court also determined defendants "offered no objective standard which the court [could] use to measure [plaintiff's] actions" in reviewing the tax statements. The court noted that the Borough's 1994 attorney "testified that he believed the lots would merge for tax purposes and additional tax would be de [minimis]." In addition, the court found that in 2014 the then Borough attorney "acquiesced to [plaintiff's] claim" of ownership of the property and did not assert "it was too late for [plaintiff] to bring her claim" of ownership to the property.

The court also determined plaintiff's 2014 encounter with King was insufficient to start the limitations period because neither he nor defendants did anything when she informed him of her ownership of the property.[11] The court further found that when King reappeared on the property in 2018, plaintiff promptly filed her complaint seeking a corrected deed.

---

[11] The parties agree that in its written opinion, the trial court erroneously referred to the 2014 meeting between plaintiff and King as the "2004 encounter." The uncontroverted evidence established the first meeting between plaintiff and King occurred in 2014.

The court entered an order directing the issuance of a corrective deed and dismissing defendants' counterclaim seeking an order allowing the Borough to transfer title to the property to them. This appeal followed.

II.

Only defendants appeal from the court's order; the Borough does not. Plaintiff claims the appeal should be dismissed because defendants lack standing. Plaintiff contends the complaint sought a corrective deed from the Borough only and, as a result, defendants "are not a party to the sole dispute at issue." Plaintiff further claims that any purported injury suffered by defendants is solely the result of "their alleged contract and course of dealing with" the Borough, and the resolution of any dispute between defendants and the Borough is unrelated to the court's determination that plaintiff is entitled to a corrective deed.

Issues concerning standing involve questions of law that we review de novo. See, e.g., NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 444 (App. Div. 2011) (explaining appellate courts conduct de novo reviews of trial court determinations concerning standing). "Whether a party has standing is a 'threshold justiciability determination,' neither subject to waiver nor conferrable by consent." N.J. Dep't of Env't Prot. v. Exxon Mobil

15

Corp., 453 N.J. Super. 272, 291 (App. Div. 2018) (quoting In re Six Month Extension of N.J.A.C. 5:91-1 et. seq., 372 N.J. Super. 61, 85 (App. Div. 2004)).

Although "[o]ur courts generally take a liberal view of standing," a party's "standing is not automatic." Ibid. A party has standing to appeal when it is "aggrieved by a judgment." State v. A.L., 440 N.J. Super. 400, 418 (App. Div. 2015) (quoting Howard Sav. Inst. v. Peep, 34 N.J. 494, 499 (1961)). "It is the general rule that to be aggrieved a party must have a personal or pecuniary interest or property right adversely affected by the judgment in question." Ibid. (quoting Howard Sav. Inst., 34 N.J. at 499).

We reject plaintiff's claim defendants lack standing to appeal because it ignores that plaintiff filed a cause of action in her complaint against defendants. In her complaint, plaintiff recognized defendants have an interest in the property—a contractual right to purchase Lot 16 from the Borough—and plaintiff sought a judgment against defendants affecting that right—an order prohibiting defendants from taking any action to purchase the lot from the Borough. The evidence at trial established the agreement between the Borough and defendants granted defendants a right to purchase Lot 16, and the agreement noted that although the Borough claimed ownership of the lot, court action was required to clarify the status of the Borough's title.

16

Moreover, defendants filed a counterclaim seeking to enforce their contractual right to purchase the property from the Borough. Defendants sought affirmative relief against plaintiff—an order permitting transfer of title to the property to them and an award of damages against plaintiff.

Following the trial, the court granted plaintiff's claim for relief against the Borough and defendants, and the court dismissed defendants' counterclaim. In doing so, the court effectively voided whatever contractual right defendants had to purchase Lot 16 from the Borough under the redevelopment agreement because the court's order rendered it impossible for the Borough to convey title to the property to defendants. Under those circumstances, defendants were "aggrieved by" the trial court's judgement, and they have standing to appeal from the court's final judgment. See A.L., 440 N.J. Super. at 418; see also Campus Assocs. L.L.C. v. Zoning Bd. of Adjustment of Twp. of Hillsborough, 413 N.J. Super. 527, 533-34 (App. Div. 2010) (finding "[t]o have standing, the plaintiff must have a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision," which can be satisfied by "[a] financial interest in the outcome" of the litigation) (citations omitted) (internal quotations omitted).

17

III.

Defendants argue on appeal, as they did before the trial court, that plaintiff's asserted cause of action for a corrected deed is barred by the six-year statute of limitations for actions for a contract claim under N.J.S.A. 2A:14-1. The court's determination that the complaint was timely filed followed a bench trial. When reviewing a court's decision following a bench trial, we defer to the court's findings of fact that are "supported by adequate, substantial and credible evidence." Zaman v. Felton, 219 N.J. 199, 215 (2014) (quoting Toll Bros. Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). We review de novo the "trial court's intrpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendants contend the accrual date of plaintiff's cause of action for the corrective deed was more than six years prior to the filing of her 2018 complaint and, for that reason, the cause of action is time barred under N.J.S.A. 2A:14-1. Defendants do not dispute that the evidence established plaintiff first learned of the error in the deed in 2018, immediately prior to the filing of her complaint. They instead argue the discovery rule, see generally Caravaggio v. D'Agostini, 166 N.J. 237, 245-46 (2001), controls the determination of the accrual date of

plaintiff's claim, and application of the rule required a finding the complaint was untimely.

For the reasons set forth more fully in the discussion which follows, we reject defendants' arguments for two separate, but equally dispositive, reasons. First, even assuming the statute of limitations in N.J.S.A. 2A:14-1 applies to defendant's equitable claim for correction of the deed, the court correctly applied the discovery rule and determined plaintiff timely filed her 2018 complaint. Second, defendants' reliance on the statute of limitations in N.J.S.A. 2A:14-1 is misplaced because the statute applies to actions at law and plaintiff's complaint asserts only an equitable claim for a corrective deed. We therefore affirm the court's order directing the Borough to issue a corrected deed and dismissing defendants' counterclaim.

A.

For reasons we will explain, we are not persuaded the statute of limitations in N.J.S.A. 2A:14-1 is applicable to plaintiff's claim. Defendants' opposition to plaintiff's cause of action is founded solely on the assertion that the statute bars the claim, and the court erred by failing to properly apply the discovery rule to determine the claim's accrual date. Plaintiff did not argue the statute is inapplicable to her claim, and the court addressed the statute of limitations

argument based on its acceptance of defendants' position that the statute applied in the first instance. In any event, because the parties' arguments on appeal are limited to the court's statute of limitations determination, and because defendants offer no other basis to deny plaintiff's request for a corrected deed, we address the merits of the court's finding plaintiff's claim was timely filed under N.J.S.A. 2A:14-1. Even assuming the statute applies, we affirm because we are convinced the court correctly determined the complaint was timely filed.

Under the discovery rule, a cause of action accrues when "the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio, 166 N.J. at 246); see also The Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 443 (2017). In determining whether the discovery rule applies, a court applies an objective standard: "whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ben Elazar, 230 N.J. at 134 (quoting Caravaggio, 166 N.J. at 246). Defendants argue proper application of the rule's objective standard required a finding that plaintiff's claim accrued more than six years prior to the filing of her September 2018 complaint.

Defendants do not offer a particular date they claim plaintiff's cause of action accrued. They more generally assert that, under the discovery rule, plaintiff's cause of action accrued at some point prior to September 6, 2012—six years prior to the filing of the complaint. Defendants argue the real estate tax statements plaintiff received over the years following the 1994 purchase of Lot 16 referred only to Lot 17, and the statements showed only the dimensions of Lot 17—forty-by-one-hundred-feet—and not the dimensions of the combined lots—eighty-by-one-hundred-feet. Defendants assert similar information was made available during the 1996 and 2007 refinances of plaintiff's home, and that the mortgages she granted in the refinances refer only to Lot 17. They also claim the court erred by relying on the date plaintiff first learned of the error in the deed to determine the accrual date of her claim. They argue under the objective standard required by the discovery rule, plaintiff's cause of action for the correction of the deed accrued more than six years prior to the filing of her complaint.

We are unpersuaded by defendants' claim the court did not apply the objective standard required under the discovery rule to assess the timeliness of plaintiff's claim. See generally Ben Elazar, 230 N.J. at 134. The court expressly considered defendants' arguments "that no reasonable person" having received

21

the tax bills would not have "noticed that she was not receiving a bill for [L]ot 16," and that plaintiff's alleged "lack of due diligence" could not "assist" her in avoiding the limitations period in the statute. The court's description of defendants' arguments in its analysis of the evidence reflects that it considered and decided whether "the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Ibid. (quoting Caravaggio, 166 N.J. at 246). Thus, the court properly considered the objective standard applicable to its discovery rule determination.

The court rejected defendants' discovery rule claim because the evidence concerning plaintiff's purchase of the property and receipt of the tax bills did not convince the court that a reasonable person exercising ordinary diligence would have been alerted to a claim the deed contained an error. The court noted that although the tax bills did not refer to Lot 16, the Borough attorney who prepared the 1994 deed testified he believed Lots 16 and 17 would merge following the 1994 transaction and that any increase in real estate taxes resulting from plaintiff's purchase of Lot 16 would be de minimis. The court also found that in 2014 the then Borough attorney "acquiesced to" plaintiff's claim and did not assert the claim was untimely. The court further observed the record lacked any evidence establishing an objective standard upon which it could be

22

determined that a review of the tax bills would have alerted a reasonable person that the lots did not merge following the 1994 purchase.

In our view, the evidence and lack of evidence noted by the court supports its determination that it was unconvinced a reasonable person exercising reasonable diligence would have been alerted to a claim for a corrected deed based on the receipt of the tax bills. Unlike the defendants' myopic focus on the tax bills, the court properly considered the totality of the circumstances presented by the evidentiary record in its application of the objective standard. See Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 339 (2010) (explaining the court must evaluate the "totality of the circumstances" in determining the date of accrual of a cause of action under the discovery rule). Although the record established plaintiff's receipt of the tax bills, it also included evidence that plaintiff was advised the lots would merge following the 1994 purchase and the purchase would have a de minimis impact on the real estate taxes.[12] Read fairly, we interpret the court's decision to conclude the record was insufficient

---

[12]  In its findings, the court referred only to the testimony of the Borough attorney who prepared the deed in 1994 that he believed the lots would merge and the tax impact of the 1994 purchase would be de minimis. We observe, however, plaintiff similarly testified she understood the lots would merge following the 1994 purchase and that the purchase would have only a minimal impact on her real estate taxes.

to support a finding that a reasonable person exercising ordinary diligence, who understood the lots would merge and any tax increase would be de minimis, would have been alerted by the tax bills that there was an error in the property description or block and lot numbers in the 1994 deed prepared by the Borough attorney.[13]

The court's findings are supported by the record, and we discern no basis to reverse the court's determination. In addition, and as determined by the court, plaintiff did not actually discover the error in the deed until 2018, a short time before she filed her complaint.[14] Thus, the filing of the complaint was within the six-year limitations period. See N.J.S.A. 2A:14-1. For those reasons alone, even assuming the statute of limitations applies to plaintiff's claim, we affirm

---

[13] We recognize defendants rely on facts other than plaintiff's receipt of the tax bills, including the two refinances of plaintiff's property that resulted in her granting mortgages only on "Lot 17," but the evidence shows no issues were raised during the closings concerning the accuracy of the 1994 deed or the inclusion of the two lots as security for the refinance loans, and, in light of plaintiff's understanding the lots had merged, the references to only Lot 17 during the closings would not have alerted plaintiff about any error in the 1994 deed. Plaintiff's counsel for the closings, who was the same attorney who drafted the erroneous 1994 deed, testified there was no reason during the refinances to question the accuracy of the 1994 deed.

[14] We need not consider whether plaintiff's interaction with King in 2014 should have alerted a reasonable person exercising ordinary diligence that there was an error in the deed because, even if it did, plaintiff's filing of her complaint four years later was timely under N.J.S.A. 2A:14-1.

the court's order directing that the Borough issue a corrective deed and dismissing defendants' counterclaim.

B.

Although not raised by the parties, we affirm for an additional reason. As we have explained, in its opposition to plaintiff's claim before the trial court and on appeal, defendants rely solely on the statute of limitations set forth in N.J.S.A. 2A:14-1. In pertinent part, by its plain terms N.J.S.A. 2A:14-1 applies only to "action[s] at law . . . for recovery upon a contractual claim or liability." See Desiderio v. D'Ambrosio, 190 N.J. Super. 424, 429 (Ch. Div. 1983) (explaining "N.J.S.A. 2A:14-1[] is by its terms applicable only to an 'action at law'"). Plaintiff, however, did not assert an action at law in her complaint. She did not allege the Borough breached an agreement to convey title to Lot 16, and she did not seek damages for an alleged breach of contract.

Plaintiff's complaint instead sought a purely equitable remedy— correction of what neither the Borough nor defendants dispute are errors in the deed's description and block and lot numbers. The Borough conceded plaintiff and Charles Lott purchased the property from it in 1994 for $5,000, and the Borough does not appeal from the court's order directing that it correct errors in a deed prepared by the Borough attorney, signed by the Borough's mayor, and

filed by the Borough in the County Clerk's office. The correction of mistakes in deeds "is one of the ancient and well established heads of equity jurisdiction, and it is the duty of the court where [a] mistake is clearly proved, to correct it by any means in its power to effect the amendment and the object of it." Loss v. Obry, 22 N.J. Eq. 52, 54 (Ch. 1871); see also Italian-Am. Bldg. & Loan Ass'n of Passaic Cnty. v. Russo, 130 N.J. Eq. 232, 236 (Ch. 1941) ("The correction of mistakes in documents is of course a familiar ground of equity jurisdiction."); Burgin v. Giberson, 26 N.J. Eq. 72, 77 (Ch. 1875) ("Courts of equity will relieve against mistake, and will correct and reform deeds . . . to grant such relief.").

The statute of limitations contained in N.J.S.A. 2A:14-1 is inapplicable to plaintiff's equitable claim for the corrected deed, and defendants' reliance on the statute as its solitary defense to plaintiff's claim is misplaced and should have been rejected by the trial court. Since defendants and the Borough offered no other basis for their opposition to plaintiff's claim, the court should have rejected defendants' reliance on N.J.S.A. 2A:14-1 and ordered that the Borough issue the corrective deed for that reason alone.

"[I]n matters as to which no statute of limitations is directly applicable, courts first look to see whether there is an analogous statute that might appropriately fix the period of timeliness as to the equitable remedy." Fox v.

<u>Millman</u>, 210 N.J. 401, 422 (2012). That is, "[w]here the equitable cause of action is analogous to the one at law, laches may depend solely on the comparable statute of limitations." <u>Lavin v. Bd. of Educ. of Hackensack</u>, 90 N.J. 145, 152 n.1 (1982). Where, as here, we find no analogous statute of limitations for a claim to correct admitted and undisputed errors in a deed, defendants' timeliness claim should have been based on the doctrine of laches.[15] <u>See</u> <u>id.</u> at 151 (explaining laches is "an equitable defense that may be interposed in the absence of the statute of limitations").

The doctrine of laches is "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." <u>Knorr v. Smeal</u>, 178 N.J. 169, 180-81 (2003). "[L]aches is not governed by fixed time limits but instead relies on analysis of time constraints that 'are characteristically flexible.'" <u>Fox</u>, 210 N.J. at 418 (citation omitted) (quoting <u>Lavin</u>, 90 N.J. at

---

[15] Even if N.J.S.A. 2A:14-1 is considered an analogous statute, for the reasons we have detailed, the court correctly determined the claim was timely filed. In addition, a court must apply an analogous statute of limitations for an equitable claim "unless there is an overriding reason why that application would be inequitable." <u>Fox</u>, 210 N.J. at 422. Here, even if we determined N.J.S.A. 2A:14-1 or some other statute of limitations was applicable to plaintiff's equitable claim and would otherwise bar the claim, there is an overriding reason application of a statute of limitations time-bar would be inequitable. As we explain, the equities require the issuance of the corrective deed.

151). A court may apply the doctrine of laches "when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181. The judge should consider "the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90 N.J. at 152). The "central issue" in the application of the doctrine of laches "is whether it is inequitable to permit the claim to be enforced," and "[i]nequity, more often than not, will turn on whether a party has been misled to his harm by the delay." Lavin, 90 N.J. at 152-53.

Even if defendants had relied on laches and the court had considered it as a defense to plaintiff's claim, the court could not have properly concluded that plaintiff's equitable claim for a corrective deed is barred. The Borough prepared, executed, and recorded the erroneous deed, which incorporated and included as an attachment the 1994 resolution authorizing the sale of Lot 16. The Borough does not dispute plaintiff purchased the property in 1994 and paid $5000 for it, and the Borough does not claim any prejudice from any purported delay in the filing of the complaint. Indeed, the Borough does not appeal from the court's order directing its issuance of a corrective deed. Plaintiff has openly maintained and used the property since 1994 without objection from the Borough, and the

28                                                                      A-1123-19T4

Borough took no action following its attorney's receipt in 2014 of the 1994 deed and resolution to dispute or challenge plaintiff's ownership of Lot 16. Without making any attempt to address the issues raised by plaintiff's provision of the 1994 deed and resolution to its counsel in 2014, the Borough nonetheless entered into an agreement to sell Lot 16 to defendants.

Plaintiff is an innocent victim of the Borough's errors in 1994, and its decision to ignore the information provided in 2014 and enter into an agreement to sell the property to defendants that the Borough does not dispute it sold to plaintiff in 1994. The evidence supports the court's determination that plaintiff's receipt of the tax bills would not have alerted a reasonable person exercising ordinary diligence that there were errors in the deed. Defendants admitted at oral argument they chose not to assert a claim against the Borough because they seek to maintain their business relationship with the Borough. Defendants' decision to ignore that the Borough agreed to sell them property the Borough acknowledges it sold to plaintiff in 1994 does not support a finding of any equities in their favor over those of plaintiff, who all parties agree purchased and paid for Lot 16 in 1994.

The evidence presented at trial does not demonstrate defendants suffered any prejudice from any purported delay in the assertion of plaintiff's claim.

29

Defendants did not agree to purchase the property until 2018; their agreement with the Borough noted there may be title issues related to the property that needed to be resolved in a court proceeding; and, to the extent they may be prejudiced by the Borough's inability to convey title to the property it sold in 1994, the fault lies solely with the Borough, which agreed to sell the property with knowledge it had previously sold the property to plaintiff. The record further shows that immediately after first learning the deed contained an error, plaintiff filed her claim seeking a corrective deed.

In sum, the record permits only the conclusion plaintiff that did not unreasonably delay in asserting her claim once the basis for it was discovered, and neither defendants nor the Borough suffered any prejudice from plaintiff's filing of her complaint in 2018 seeking correction of a deed that indisputably contained an error. Based on all those circumstances, the equities overwhelmingly weigh in favor of plaintiff's claim to correct the errors, and there is no basis in the record to conclude it would be inequitable to defendants to allow plaintiff the relief sought in her complaint. See Lavin, 90 N.J. at 153. Neither the statute of limitations nor the doctrine of laches barred plaintiff's claim. The court correctly ordered the Borough to issue the corrective deed and dismissed defendants' counterclaims.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1123-19T4